IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREG RISTENBATT,<br>　　　　Plaintiff<br>　　v.<br><br>WESTERN GLASS SUPPLY, INC.<br>and WOOD'S POWR-GRIP CO., INC.,<br>　　　　Defendants<br><br>　　v.<br><br>FLOYD BELL, INC. and ADSENS TECH,<br>INC.,<br>　　　　Additional Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:    No. 1:20-cv-01634<br><br>    (Judge Kane) |

**MEMORANDUM**

Before the Court are: (1) Third-Party Defendant Adsens Tech Inc. ("Adsens")' Motion to Dismiss Amended Third-Party Joinder Complaint for lack of personal jurisdiction (Doc. No. 31), and (2) Third-Party Defendant Floyd Bell, Inc. ("Bell")'s Motion to Dismiss Amended Third-Party Joinder Complaint (Doc. No. 30). For the following reasons, the Court will grant Adsens' motion to dismiss and deny Bell's motion to dismiss.

**I.    BACKGROUND**[1]

Plaintiff was an employee of Rose Metal Systems, Inc. ("Rose Metal") who, on or about April 18, 2019, as part of his job duties, worked at a construction project located at 401 York Avenue, Duryea, Pennsylvania (the "Job Site"). (Doc. No. 1 ¶¶ 6-8.) While at the Job Site on that day, Rose Metal employees used a vacuum panel lifter, model PCFS10T04DC2 ("Panel Lifter"), manufactured by Defendant WPG and sold to Rose Metal by Defendant WGS to lift a

---

[1] The following factual background is taken from the allegations of Plaintiff Greg Ristenbatt ("Plaintiff")'s Complaint against Defendants Wood's Powr-Grip Co., Inc. ("WPG") and Western Glass Supply, Inc. ("WGS"), as well as the allegations of Third-Party Plaintiff WPG's Amended Third-Party Joinder Complaint. (Doc. Nos. 1, 25.)

metal panel.  (Id. ¶ 8.)  The connection between the metal panel and the Panel Lifter suddenly failed, without visible or audible warnings, resulting in the metal panel falling onto Plaintiff and seriously injuring him.  (Id. ¶¶ 9-10.)

Defendant WPG purchased an "Audio Alarm," model number TXC-V86-515QR, manufactured and sold by Defendant Bell and incorporated the component into the Panel Lifter.  (Doc. No. 25 ¶ 14.)  The "Audio Alarm" was part of the system of the Panel Lifter intended to alert when the Panel Lifter did or did not have adequate vacuum pressure with the object it was being attached to.  (Id. ¶ 15.)  Defendant WPG purchased a 1/8 NPT vacuum switch with dual set point ("Vacuum Switch"), model #AP25V-04-F2-QD, manufactured and sold by Defendant Adsens and incorporated the component into its Panel Lifter product.  (Id. ¶ 16.)  The Vacuum Switch controls and/or instructs the vacuum pump to run when the vacuum suction/pressure drops below a preset level and also controls the activation of the "Audio Alarm" when pressure is below preset levels.  (Id. ¶ 17.)  Defendant WPG purchased a 1/8 FNPT 0.144Cv 4-way 12VDC solenoid valve ("Solenoid Valve"), model #410-12VDC, manufactured and sold by Defendant Humphrey Products Company ("Humphrey") and incorporated the component into its Panel Lifter product.  (Id. ¶ 18.)  The Solenoid Valve was part of the Panel Lifter which controlled air flow toward and away from the Panel Lifter's vacuum pads and controlled the attachment and release of the Panel Lifter from the object it was being attached to.  (Id. ¶ 19.)

On September 9, 2020, Plaintiff filed a complaint against Defendants WPG and WGS (Doc. No. 1) alleging claims of negligence (Counts 1 and 2) and strict products liability-manufacturing defect (Counts 3 and 4) against both defendants.  Defendant WGS filed its answer with affirmative defenses on October 12, 2020.  (Doc. No. 6).  Defendant WPG filed its answer to the complaint on November 12, 2020.  (Doc. No. 10.)  By Order dated November 16, 2020,

the Court scheduled a case management conference for January 7, 2021. (Doc. No. 12.) After the case management conference on January 7, 2021, the Court issued a Case Management Order setting a close of fact discovery date of June 3, 2021, and a post-discovery status conference for June 17, 2021. (Doc. No. 15.)

On February 26, 2021, WPG filed a Third-Party Joinder Complaint ("Joinder Complaint") against Bell, Adsens, and Humphrey. (Doc. No. 17.) The Joinder Complaint asserted the following claims against Bell, Adsens, and Humphrey: negligence, contribution, indemnification, strict liability-defect in manufacturing and/or assembly, and products liability-negligent manufacturing and/or assembly. (Id.) On April 7, 2021, WPG filed another Joinder Complaint (the "Amended Joinder Complaint"). (Doc. No. 25.) At about the same time, WPG filed a joint motion for an extension of time to complete discovery. (Doc. No. 26.) The Court granted the motion, extending the close of discovery period to October 3, 2021. (Doc. No. 27.)

Bell, Adsens, and Humphrey subsequently filed motions to dismiss the Amended Joinder Complaint. Bell and Humphrey filed their motions on April 21, 2021, and April 28, 2021, respectively, seeking to dismiss the Amended Joinder Complaint for failure to state a claim upon which relief may be granted (Doc. Nos. 30, 32), and Adsens filed a motion to dismiss for lack of personal jurisdiction on April 28, 2021 (Doc. No. 31). Bell filed a brief in support of its motion to dismiss on May 4, 2021 (Doc. No. 33), and Adsens filed its brief in support of its motion on May 11, 2021 (Doc. No. 35). Subsequently, WPG filed oppositions to Bell and Adsens' motions (Doc. Nos. 37, 39), and filed a notice of voluntary dismissal with regard to its claims against Humphrey (Doc. No. 38). Bell and Adsens filed reply briefs in support of their motions to dismiss on June 1, 2021, and June 8, 2021, respectively.

On July 19, 2021, the Court issued an Order striking the Joinder Complaint and Amended Joinder Complaint for failure to comply with Federal Rule of Civil Procedure 14 and denying the pending motions to dismiss as moot. (Doc. No. 42.) WPG thereafter filed a Motion for Reconsideration of this Court's July 19, 2021 Order or, in the alternative, Motion for Leave to File a Joinder Complaint against Bell and Adsens. (Doc. No. 44.) By Order dated **XX**, the Court granted the motion insofar as it sought leave to file a Joinder Complaint against Bell and Adsens; reinstated the Joinder Complaint and Amended Joinder Complaint on the docket; directed the Clerk of Court to reinstate Bell and Adsens as additional defendants in this matter; and reinstated Bell and Adsens' motions to dismiss. (Doc. No. **XX**.) Accordingly, Bell and Adsens' motions are ripe for disposition.

## II.     LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss a complaint for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). Once "the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." See Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff must "establish[] jurisdictional facts through sworn affidavits or other competent evidence." See Time Share Vacation Club v. Atl. Resorts, 735 F.2d 61, 66 n.9 (3d Cir. 1984). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." See id.

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." Carteret Sav. Bank, 954 F.2d at 144-45 (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm statute permits the Court to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). Therefore, in its exercise of personal jurisdiction, this Court is constrained only by the Due Process Clause of the United States Constitution, which requires that a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Requiring "minimum contacts" between the defendant and the forum state gives "fair warning" to a defendant that he or she may be called to defend a lawsuit in that state. See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (quotation omitted).

Two forms of personal jurisdiction conform to these notions of due process. General jurisdiction exists when a defendant has such "systematic and continuous contacts" with the forum state that jurisdiction over the defendant is warranted. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415 (1984); Marten, 499 F.3d at 296. Specific jurisdiction exists when the claims arise out of or relate to activities that the defendant "purposefully directed" at the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); Helicopteros, 466 U.S. at 414; Marten, 499 F.3d at 296. To determine whether specific jurisdiction exists, a court must consider: (1) whether the defendant "purposefully directed" activities at the forum state and (2) whether the plaintiff's claims arise out of or relate to those activities. See Marten, 499 F.3d at 296. If these two factors are met, the court must then

5

determine whether exercising personal jurisdiction over the defendant "otherwise 'comport[s] with fair play and substantial justice.'"  See id. (alteration in original) (quoting Burger King, 471 U.S. at 476).  In addition, the plaintiff bears the burden of proving that the court may properly exercise personal jurisdiction under either the general or specific jurisdiction theory.  See Mellon Bank (East) PSFS Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (citing Carteret, 954 F.2d at 146) (stating that "[w]hen a defendant raises the defense of [a] court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper").

      **B.**     **Federal Rule of Civil Procedure 12(b)(6)**

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. See id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court has instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck

v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

### III.   DISCUSSION

#### A.   Adsens' Motion to Dismiss for Lack of Personal Jurisdiction

In support of its motion to dismiss for lack of personal jurisdiction, Adsens maintains that this Court lacks both general and specific personal jurisdiction over it. Adsens has proffered the Declaration of Jason Fan, President of Adsens, in support of its motion. (Doc. No. 31-2, the "Fan Declaration".) According to the Fan Declaration, Adsens is a supplier of products, in the form of machine parts or components, for the fluid power industries, and is incorporated in California with a principal place of business located at 18310 Bedford Circle in City of Industry, California. (Id. ¶¶ 4-5.) In addition, Fan represents that "Adsens does not manufacture any parts or sell directly to any end users of the products; rather, Adsens is strictly a 'middle person' facilitating the transfer of products to distributors." (Id. ¶ 6.) Further, he states that Adsens does not have any exclusive distributors, and that it "purchases machine parts from Taiwan and other locations," which "[u]pon receipt and without opening the packaged merchandise, Adsens sells the parts to distributors." (Id. ¶¶ 7-8.) Fan also represents that "Adsens has no control over where the distributors market or sell the products purchased from Adsens." (Id. ¶ 9.)

Further, as to the vacuum switch identified in this litigation, Fan states that it was purchased from Kita Company in Taiwan and then sold without opening the package to a distributor in Idaho, and that "Adsens had no control over where the Idahoan distributor marketed or sold the vacuum switch identified in this litigation," and so "was completely unaware as to where the product would go after sale to the distributor in Idaho nor any way to determine whether the vacuum switch would be distributed to Pennsylvania." (Id. ¶¶ 10-12.)

Further, as to the switch itself, Fan represents that it "is not hazardous by nature and this litigation is the first and only time the product has been the subject of a personal injury claim or lawsuit." (Id. ¶ 13.)

As to its potential connection to Pennsylvania, Fan states that: Adsens does not own realty in Pennsylvania; Adsens is not a citizen of Pennsylvania and does not maintain a place of business in Pennsylvania; Adsens does not have any sales representatives physically located in Pennsylvania or dedicated to sales in Pennsylvania; Adsens does not have any licenses, registration, or authorizations from Pennsylvania and is not registered as a foreign corporation; Adsens does not pay any business taxes to Pennsylvania; Adsens does not buy any products or material from Pennsylvania vendors; Adsens has never specifically designed a product for the Pennsylvania market; and Adsens has never advertised in Pennsylvania nor does it specifically target the Pennsylvania market. (Id. ¶¶ 14-20, 24.)

Fan represents that Adsens "sells its products to distributors in all fifty states with sales to Pennsylvania distributors accounting for 2% to 3% of its overall sales." (Id. ¶ 21.) Further, he states that "Adsens operates a website at www.adsens.net whose exclusive purpose is to provide information about the business. No products can be purchased directly through the website; rather, any inquiries as to products are directed to Adsens' principal place of business in City of Industry, California." (Id. ¶ 22.) Finally, Fan represents that its "website is accessible from all fifty states," but it "has never advertised in Pennsylvania nor does Adsens specifically target the Pennsylvania market." (Id. ¶¶ 23-24.)

Accordingly, based on the Fan Declaration, Adsens argues that it is not subject to general jurisdiction in Pennsylvania because it is incorporated in California with a principal place of business located at 18310 Bedford Circle in City of Industry, California, and further, because it is

not incorporated in Pennsylvania, does not maintain any place of business in Pennsylvania, is not a citizen of Pennsylvania and does not own any realty in Pennsylvania. (Doc. No. 35 at 5.) WPG concedes that it cannot establish that this Court has general jurisdiction over Adsens. (Doc. No. 39 at 5.)

Adsens similarly maintains that there is no basis for exercising specific jurisdiction over it, arguing that it fails the two initial prongs of the specific jurisdiction inquiry—(1) that the defendant have purposefully directed its activities at the forum state, and (2) that the litigation arises out of or relates to at least one of those activities. (Doc. No. 35 at 6-7.) As to the first prong, Adsens argues that the Amended Joinder Complaint does not contain any allegations that Adsens purposefully directed any activities at the Commonwealth of Pennsylvania, and maintains that the Fan Declaration confirms that "Adsens has never advertised in Pennsylvania and does not specifically target the Pennsylvania market." (Id. at 7.) As to the second prong, Adsens maintains that, according to the Fan Declaration, "there is no basis to conclude that Defendant WP[G]'s product liability based claims against Adsens arose or related to even one activity by Adsens directed at Pennsylvania." (Id.) Adsens points to the Fan Declaration, which asserts that Adsens purchased the vacuum switch that is the subject of WPG's claims against it from Kita Company in Taiwan and then sold it to a distributor in Idaho. (Id.) Adsens argues that the Fan Declaration demonstrates that it "had no control over where the Idahoan distributor subsequently marketed or sold the subject vacuum switch," and "had no knowledge that the vacuum switch would reach Pennsylvania nor any intent for it to do so." (Id.) Adsens asserts that the allegations of the Amended Joinder Complaint reflect that "it is evident that somewhere further down the chain (and wholly unbeknownst to Adsens) Defendant WPG purchased the vacuum switch, incorporated it into the panel lifter and then sold the panel lifter to Defendant

Western Glass who then sold it to Rose Metal for use in Pennsylvania." (Id.) Accordingly, Adsens maintains that any contacts that it had with Pennsylvania were too attenuated for it to reasonably expect to be "haled into court" in Pennsylvania. (Id. at 8.) For both of these reasons, Adsens argues that WPG cannot satisfy its burden to demonstrate specific jurisdiction over Adsens in this matter.

WPG argues that it has produced evidence establishing that specific jurisdiction exists as to its claims against Adsens. (Doc. No. 39 at 5.) WPG relies exclusively on the recent Supreme Court case of Ford Motor Co. v. Montana Eighth Judicial District Court, 141 S. Ct. 1017 (2021) in support of its argument that this Court has specific jurisdiction over Adsens in this matter. (Id. at 5-6.) WPG maintains that, in Ford, the motor vehicle involved in an accident was manufactured in another state or country and sold in a state other than where the accident occurred, and Ford argued that it was unforeseeable that a vehicle manufactured and sold outside the forum State would be involved in an accident in the forum State. (Id.) WPG maintains that "Ford's argument is similar to Adsens' current position that it merely put its component into the stream of commerce and it could not be accountable if the accident occurred in a state other than where its products was originally sold." (Id. at 6.) WPG argues that Ford stands for the proposition that "specific jurisdiction attaches when a company serves a market with a product in a forum State and this particular type of product malfunctions." (Id.) WPG asserts that to establish specific jurisdiction under Ford, it "need only establish that Adsens availed itself to the Pennsylvania market for this product and thereby had fair notice that its product could be involved in accidents within Pennsylvania." (Id. at 7-8.)

As factual support for its legal argument, WPG attaches several exhibits, specifically: photos of Adsens products, a screenshot of Adsens' website, a screenshot of the website of a

supplier within Pennsylvania listing Adsens products, a screenshot of a supplier search for Adsens, and the Adsens product manual. (Doc. No. 39 at 9-25, Exhs. A-E.) WPG maintains that these exhibits demonstrate that Adsens is not a "middle-man" but instead produces its own products which it intended to be incorporated into other products and "deliberately extended itself into Pennsylvania by establishing approved suppliers/distributors/retailers that sold its products directly to the Pennsylvania and tri-state area markets," arguing that "Airmatic and Arline maintained at least four (4) separate retail locations within Pennsylvania and included the AP25 Series product as one of the Adsens products sold by Airmatic and Airline." (Id. at 3, 7.) WPG argues that "[a]ccordingly, the evidence establishes that Adsens has embraced the forum state of Pennsylvania, and per the case law cited supra, it is not unreasonable to subject Adsens to specific jurisdiction in Pennsylvania." (Id. at 8.)

Upon consideration of the briefs of the parties, the evidence of record, and the relevant authorities, the Court concludes that WPG has failed to meet its burden to demonstrate, by a preponderance of the evidence, facts sufficient to support this Court's exercise of specific personal jurisdiction over Adsens. As noted above, specific jurisdiction is established where (1) a defendant purposely directs its activities at the forum state; (2) the plaintiff's claim arises out of or relates to at least one of those specific activities; and (3) the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. See O'Connor, 496 F.3d at 317. WPG has failed to establish that its claim against Adsens "arise[s] out of or relate[s] to" any of the contacts it alleges Adsens has had with Pennsylvania.

WPG's claim against Adsens arises from a vacuum switch purchased by Adsens from Kita Company in Taiwan and sold to a distributor in Idaho (Doc. No. 31-1 ¶¶ 10-11), that WPG alleges Adsens: (1) failed to properly manufacture, (2) caused or permitted to be sold or

supplied in an unsafe condition, (3) failed to recognize and warn of dangerous conditions, (4) failed to inspect and/or correct the defective assembly of, (5) violated applicable codes, statutes, or industry standards, and (6) selected, assembled and/or manufactured improper materials for (Doc. No. 25 ¶ 47).

The evidence proffered by WPG in order to demonstrate specific jurisdiction here is directed at demonstrating that Adsens had some contacts with the forum State through the potential sale of its products through two suppliers physically located in Pennsylvania. (Doc. No. 39 at 10-25.) However, nothing submitted by WPG contradicts the facts proffered by way of the Fan Declaration indicating that Adsens had no contact with Pennsylvania related to WPG's claim arising out of this particular vacuum switch installed in the Panel Lifter which failed, causing Plaintiff's injuries. As noted above, the Fan Declaration attests that Adsens purchased the vacuum switch at issue from Kita Company in Taiwan and sold it to a distributor in Idaho, and that Adsens had no control over where the distributor marketed or sold the vacuum switch. (Doc. No. 31-2 ¶¶ 11-12.) Accordingly, WPG fails to demonstrate even some minimal link between Adsens' contacts with Pennsylvania and its claim arising out of the vacuum switch. Apparently realizing this fact, WPG, as noted above, relies solely on the recent Supreme Court case of Ford in support of its claim that this Court has specific jurisdiction over Adsens.

In Ford, the Supreme Court held that a strict causal nexus between a claim and a defendant's contacts with the forum state is unnecessary to support a claim of specific jurisdiction under certain circumstances; in particular, where a plaintiff's claims share a sufficiently strong affiliation with and therefore, relate to, the systemic contacts of a defendant with the forum state. See Ford, 141 S. Ct. at 1026. Specifically, the Supreme Court determined that Minnesota and Montana courts could permissibly exercise jurisdiction over Ford Motor

Company for claims alleging an "in-state injury" caused by "defective products that Ford extensively promoted, sold, and serviced in Montana and Minnesota," despite the fact that the cars at issue were sold by Ford outside of the forum states and then resold by consumers to the in-state plaintiffs.  See id. at 1028.  After noting that Ford had conceded the first prong of the specific jurisdiction inquiry—"purposeful availment" of the market of those two states—the Supreme Court held as follows:

> In other words, Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiff alleges malfunctioned and injured them in those States.  So there is a strong "relationship among the defendant, the forum, and the litigation" – the "essential foundation" of specific jurisdiction.  Helicopteros, 466 U.S., at 414, 104 S. Ct. 1868 (internal quotation marks omitted).  That is why this Court has used this exact fact pattern (a resident-plaintiff sues a global car company, extensively serving the same market in a vehicle, for an in-state accident) as an illustration—even a paradigm example—of how specific jurisdiction works.

Id.  The Supreme Court found that Ford's "veritable truckload of contacts with Montana and Minnesota" were "close enough to support specific jurisdiction." See id. at 1031-32.

The Court is unpersuaded that the holding of Ford is broad enough to dictate the exercise of specific jurisdiction in the instant case.  In Ford, the Supreme Court characterized its holding in the following way: "[w]hen a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit."  See id. at 1022.  The Supreme Court noted the limitation of its holding in a footnote:

> None of this is to say that any person using any means to sell any good in a State is subject to jurisdiction there if the product malfunctions after arrival.  We have long treated isolated or sporadic transactions differently from continuous ones. And we do not here consider internet transactions, which may raise doctrinal questions of their own.

14

See id. at 1028 n. 4.  The Court finds that the evidence proffered by WPG in opposition to Adsens' motion—two screenshots purporting to demonstrate two suppliers located in Pennsylvania who sell Adsens' AP25 Series product—viewed in connection with the Fan Declaration, falls short of a demonstration of the level of systemic contacts within the forum state sufficient to support specific jurisdiction in the absence of a strict causal nexus, as in Ford.[2] Accordingly, the Court will grant Adsens' motion to dismiss WPG's Amended Joinder Complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

      **B.**      **Bell's Motion to Dismiss**

As noted above, Bell moves to dismiss the claims asserted against it in the Amended Joinder Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 30.)  In support of its motion, Bell argues that the Amended Joinder Complaint fails to allege sufficient facts to support the claims against it, arguing that "[t]he only facts alleged in the Amended Joinder Complaint and the Plaintiff's Complaint regarding the Floyd Bell alarm is that the alarm did not sound when the vacuum lifter lost pressure.  There are no factual allegations describing how or why the alarm was defective." (Doc. No. 33 at 5.)   Defendant WPG opposes Bell's motion, arguing that "WPG plead that the Panel Lifter incorporated Floyd Bell's Audio Alarm

---

[2] Moreover, the Court notes that Ford conceded the first prong of the specific jurisdiction inquiry—that it had purposefully availed itself of the markets of the forum states, whereas here, Adsens does not, and has proffered uncontested evidence (by way of the Fan Declaration) that it has never advertised in Pennsylvania nor specifically targeted the Pennsylvania market.  The Court finds that the two screen shots of Pennsylvania suppliers who include Adsens products for sale on their websites proffered by WPG do not adequately rebut the evidence proffered by Adsens as to its lack of marketing activities with regard to Pennsylvania.  As noted above, the Fan Declaration attests that Adsens: has no exclusive distributors/suppliers; has no sales representatives in Pennsylvania or dedicated to sales to Pennsylvania; sells its products to suppliers in all fifty states, with sales to Pennsylvania suppliers accounting for 2-3% of its overall sales; and has never advertised in Pennsylvania or otherwise specifically targeted the Pennsylvania market. (Doc. No. 31-2 ¶¶ 7, 16, 21-22, 24.)

with the purpose of making audible noise as a warning and the Audio Alarm failed to do so on the date of the accident and in a post-accident test." (Doc. No. 37 at 5.)

Upon consideration of the arguments of the parties, the Amended Joinder Complaint, and the relevant authorities, the Court concludes that Bell has failed to demonstrate that WPG's claims against it are subject to dismissal at this juncture. As recognized by Bell in its initial brief, the first step the Court undertakes in assessing a motion to dismiss under Rule 12(b)(6) is to identify the elements a plaintiff must plead to state a claim. See Santiago, 629 F.3d at 130 (citation omitted). After the Court identifies the elements required to be pled in order to state a claim, it then separates well-pleaded facts from legal conclusions, and then finally assesses whether the well-pleaded facts are sufficient to demonstrate a "plausible claim for relief" under the relevant law. See id. The Court notes that WPG's Amended Joinder Complaint purports to assert the following claims against Bell: negligence, contribution, indemnification, strict liability – defect in manufacturing and/or assembly, and product liability – negligent manufacturing and/or assembly. (Doc. No. 25 at 3-7.) Bell's briefing on its motion contains no discussion of the law applicable to the causes of action asserted against it and the elements required to be pleaded for each cause of action. Without such a discussion, and an explanation of how the facts alleged by Defendant WPG fail to state a plausible claim for relief under the law applicable to each cause of action asserted against it, Bell has failed to demonstrate to the Court that WPG's claims against it are subject to dismissal under Rule 12(b)(6). Accordingly, Bell's motion will be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Third-Party Defendant Adsens' motion to dismiss, and will deny Third-Party Defendant Bell's motion to dismiss.  An Order consistent with this Memorandum follows.